FIFTEEN HUNDRED WALNUT STREET CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48026. Filed October 21, 1955.

*Bernard V. Lentz, Esq.*, for the petitioner.
*Edward Pesin, Esq.*, for the respondent.

66

OPINION.

WITHEY, *Judge:* Petitioner takes the position that the amounts of $33,177.10, $61,250.04, and $28,072.86 with which petitioner debited the "Note Payable—First National Bank" account on its books during 1948, 1949, and 1950, respectively, and which National credited as interest income on its books during those years, did not constitute income taxable to it for 1948, 1949, and 1950. In support of its position, petitioner contends that such amounts constituted advance rental realized in 1943 when the judgment against it was satisfied and its note was executed and delivered to National.

Respondent contends that petitioner realized rental income in the foregoing amounts during 1948, 1949, and 1950, because of its services in providing office space to National's sublessee, Drexel & Co., for the 2-year period commencing June 15, 1948. Respondent argues that rentals accrued under the lease involved herein simultaneously with National's monthly reduction of the aggregate amount of the outstanding balance due on the instrument executed August 21, 1943.

In support of its position, petitioner relies on *Commissioner* v. *Lyon*, 97 F. 2d 70. In that case, decedent executed a lease under the terms of which he received from the lessee an immediate cash payment of $75,000, one-tenth of which was to be applied to the rental due for each of the last 10 months of the term. The lease provided that the $75,000 payment would be repayable by the lessor only in the event that the lease was terminated otherwise than by default of the lessee. The United States Court of Appeals for the Ninth Circuit held that the provisions of the lease made it clear that in the contemplation of the parties the $75,000 cash payment was fully earned by the lessor upon execution of the lease and therefore that the amount in question was income realized in the year of execution since the lessor had in that year acquired an unconditional right to receive it.

We are of the opinion that the facts before us are readily distinguishable from those involved in *Commissioner* v. *Lyon, supra.* Whether petitioner received advance rental in 1943, as it contends, depends in part upon the intention of the parties to the lease. *Estate of Budd Frankenfield*, 17 T. C. 1304; *Commissioner* v. *Lyon, supra.* Nowhere in the original lease, in subsequent modifications thereof, or in the circumstances surrounding its execution or modification can we find evidence supporting petitioner's position that a prepayment of rent in 1943 was intended by the parties. Petitioner's contention that it received in 1943 an advance rental payment in the amount of $122,500 upon execution and delivery of its note to National, satisfaction by National of the judgment outstanding against petitioner, and destruction of the coupons on which that judgment was based, is not supported by the record. As a result of the agreement executed September 4, 1942, and the execution pursuant thereto and delivery to National of the instrument executed August 21, 1943, in the face amount of $122,500, petitioner received in 1943 a conditional contractual right, i. e., the right to keep its assets free of National's claim for cash payment of the defaulted coupons and accrued interest and the relinquishment of any claim arising out of the defaulted Wiltshire coupons, provided it met its obligation to furnish office space for National's sublessee during the period commencing June 15, 1948.

During the period beginning June 15, 1948, and ending June 14, 1950, monthly notations were made by National on the back of the

instrument executed August 21, 1943, as evidence of the proportionate discharge of petitioner's obligation.

Petitioner recorded the issuance of the instrument on its books as a "Note Payable" with a notation stating that the note was intended to evidence all outstanding indebtedness due National with respect to the debentures issued by petitioner. The total debits made by petitioner to this "Note Payable" account during the period June 15, 1948, through June 14, 1950, equaled $122,500, the face amount of the instrument.

From the foregoing, it is apparent to us that petitioner could not accrue as income the release of its combined cash and occupancy liability valued at $122,500 until it had provided space on its premises for occupancy by National's sublessee, Drexel & Co., for a 2-year period commencing June 15, 1948, since prior thereto its unrestricted right to the extinguishment of its indebtedness had not matured. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182.

Moreover, the bookkeeping entries made both by National and petitioner indicate that they intended the rent to be a currently payable obligation, rather than a prepayment as petitioner maintains. Consequently, during the period beginning June 15, 1948, and ending June 14, 1950, petitioner was released from its obligation valued at $122,500 in return for providing space to Drexel & Co.

Since, pursuant to the reorganization proceeding in 1936, petitioner assumed the debts and obligations of Wiltshire, the obligation represented by the Wiltshire coupons was imposed upon petitioner by decree of the bankruptcy court. The subsequent monthly installment discharges of this obligation by National in 1948, 1949, and 1950 resulted in the realization of income in those years by proportionately freeing petitioner's assets from the encumbrance of a lien.

A somewhat analogous situation was involved in *Isidore Brown*, 22 T. C. 147. There, taxpayer-lessor agreed to contribute $65,000 toward the cost of improving the leased property, one-half of which was payable in cash and one-half of which was to be credited against the cash rent payable by the lessee. In holding that the discharge of the lessor's obligation to pay for the cost of improvements to the extent of $32,500 was equivalent to the receipt by him of that amount in the years in which the improvements were made and the rent retained by the lessee, we stated, at page 151:

Much of the difficulty in this case is attributable to petitioner's insistence that the question is not *whether* the $32,500 credited pursuant to paragraph 22 (b) of the lease is income, but *when* it is income. If that item was income at all, $20,528.72 thereof was realized in 1948, and $11,971.28 in 1949, *when these amounts were effectively applied to extinguish petitioner's liability to the lessee.* Income may be realized in a variety of ways, other than by direct payment to the taxpayer, and, in such situations, the income may be attributed to him when it is in fact realized * * *. [Emphasis added.]

Applying the principle there enunciated to the facts before us, we are of the opinion that the amounts in question were income realized by petitioner during the period from June 15, 1948, through June 14, 1950, when it furnished National's subtenant with office space as satisfaction in part of its obligation to National on its defaulted debenture coupons, with interest.

In view of the foregoing, we hold that the amounts of $33,177.10, $61,250.04, and $28,072.86 here in controversy with respect to the years 1948, 1949, and 1950, respectively, constituted income taxable to the petitioner for those years.

*Decision will be entered under Rule 50.*